UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-2451 JGB (SPx)** | Date | January 7, 2019 |
| Title | *Richard Fowler, et al. v. Union Pacific Railroad Company* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| JOHN LOPEZ | ADELE C. FRAZIER |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Craig J. Ackermann | Koree Blyleven |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 45); and (2) GRANTING Plaintiff's Motion for Attorneys' Fees (Dkt. No. 46)

On December 10, 2018, Plaintiff Rick Hollis[1] ("Plaintiff") filed a Motion for Final Approval of Class Settlement ("MFA," Dkt. No. 45) and a Motion for Attorneys' Fees ("MAF," Dkt. No. 46). These matters are unopposed. The Court held a hearing on these matters on January 7, 2019. Upon consideration of the papers filed in support of these motions, as well as oral arguments presented by the parties, the Court GRANTS Plaintiff's MFA and GRANTS Plaintiff's MAF.

## I. BACKGROUND

On November 6, 2017, Richard Fowler and Rick Hollis filed a complaint on behalf of themselves and others similarly situated in the Superior Court of California, County of San Bernardino. (Dkt. No. 1-1.) On December 6, 2017, Defendant Union Pacific Railroad Company ("Defendant") removed the case to this Court. (Dkt. No. 1.) On December 29, 2017, Richard Fowler and Rick Hollis filed their first amended complaint alleging (1) failure to pay separately

---

[1] Although the case names two plaintiffs, Richard Fowler and Rick Hollis, only Plaintiff Rick Hollis has a timely claim for waiting time penalties under California Labor Code §§ 201-203. ("Preliminary Approval Order," Dkt. No. 42 at 1 n.1.)

and hourly rest break time (Cal. Labor Code §§ 1194, 1194.2); (2) failure to pay non-compliant rest break premiums (Cal. Labor Code §§ 226.7; Industrial Welfare Commission ("IWC") Wage Order No. 9, § 12); (3) waiting time penalties (Cal. Labor Code §§ 201-203); (4) Unfair Competition Law ("UCL") violations (Bus. & Prof. Code §§ 17200 et seq.); and (5) Private Attorneys General Act ("PAGA") Penalties (Labor §§ 2699, et seq.; 558). ("FAC," Dkt. No. 15.)

On February 26, 2018, Defendant filed a motion for judgment on the pleadings. (Dkt. No. 22.) The Court granted Defendant's motion and dismissed Plaintiff's FAC. (Dkt. No. 26.) The parties then filed a joint request for clarification regarding the effect of the Court's order on Plaintiff's claim for waiting time penalties and the portion of Plaintiff's claim under PAGA based on Plaintiff's claim for waiting time penalties. (Dkt. No. 28.) On May 17, 2018, the Court clarified the May 2, 2018 Order and denied in part Defendant's motion on Plaintiff's claims for waiting time penalties and PAGA penalties associated therewith as moot. (Dkt. No. 34). On May 21, 2018, the Court entered a partial final judgment of dismissal as to the claims that were not related to waiting time penalties. (Dkt. No. 35.) On July 23, 2018, the Court granted preliminary approval of this class action settlement and granted conditional certification of the proposed settlement class. ("Preliminary Approval Order," Dkt. No. 42.) In the Preliminary Approval Order, the Court ordered:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the settlement class.

2. The following settlement class is certified for settlement purposes only: Plaintiff and the approximately 475 former employees of Defendant Union Pacific Railroad Company who (a) had California taxes withheld from their pay at the time of their termination or resignation, (b) were terminated or resigned while working in California, (c) whose employment ended between May 13, 2014 [t]hrough the date of preliminary approval of this settlement, (d) who received their last pay check from Union Pacific either (1) after their last day of employment if they were terminated or gave 72 hours of notice of the end of their employment or (2) where they resigned without at least 72 hours of notice, more than 72 hours after their last date of employment with Union Pacific.

3. Ackermann & Tilajef, P.C.; Melmed Law Group, P.C., and Winston Law Group, P.C. are appointed as class counsel for purposes of settlement only.

4. Plaintiff Rick Hollis is qualified to act as representatives of the settlement class and is preliminarily appointed as class representative.

5. Simpluris, Inc. is appointed as the settlement administrator.

6. The settlement notice, as set forth in Exhibit A1 to the Declaration of Craig Ackermann, is approved in form and substance for use in the administration of the

    Settlement Agreement.  The Court grants the parties the authority to modify (a) the settlement notice as to the total amount of recovery, as impacted by the Escalator Clause, and (b) the amount recoverable by the settlement administrator not to exceed $13,000.  The parties shall meet and confer and modify the notice to reflect the accurate figures.

7. Simpluris, Inc. is directed to mail the notice packet to all individuals entitled to receive notice.

8. Settlement class members will have 45 days from the initial mailing of the notice packet to file a claim, opt-out, or file an objection to the Settlement.

9. The final approval hearing will be scheduled for October 15, 2018 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

(Id. at 16-17.)  On September 17, 2018, the parties filed a stipulation to continue the Final Approval Hearing because the Escalator Clause was triggered, requiring the parties to assemble revised class data and recalculate the settlement shares.  (Dkt. No. 43.)  On September 18, 2018, the Court approved the stipulation and continued the Final Approval Hearing to January 7, 2019.  (Dkt. No. 44.)  On December 10, 2018, Plaintiff file these Motions.  Defendant does not oppose the Motions.  (Dkt. No. 47.)

## II. THE SETTLEMENT AGREEMENT

Plaintiff filed a Stipulation of Settlement on June 8, 2018.  ("Settlement Agreement," Dkt. No. 36-2.)  The Court preliminarily approved the Settlement Agreement on July 23, 2018.  The terms of the Settlement Agreement are discussed below.

**A. Settlement Class**

The settlement class for the purposes of the settlement of this case includes:

> Plaintiff and the approximately 475 former employees of Defendant Union Pacific Railroad Company who (a) had California taxes withheld from their pay at the time of their termination or resignation, (b) were terminated or resigned while working in California, (c) whose employment ended between May 13, 2014 through the date of preliminary approval of this settlement, (d) who received their last pay check from Union Pacific either (1) after their last day of employment if they were terminated or gave 72 hours of notice of the end of their employment or (2) where they resigned without at least 72 hours of notice, more than 72 hours after their last date of employment with Union Pacific.

(Id. § I. ¶ 4.) However, after finalizing the class list, the Class actually consists of 1,200 individuals. (MFA at 8; "Butler Declaration," Dkt. No. 45-2 ¶ 6.) Class members do not need to submit claim forms, and all who do not elect to opt out participate in the settlement. (MFA at 9.)

**B. Release**

All settlement class members agree to release their claims as follows:

> Upon the Effective Date, each Class Member who has not submitted a timely Opt-Out request, and the Named Plaintiff, each releases the Released Parties[2], and each of them, of and from any and all Released Claims[3] during the Class Period. It is the desire of the Parties and the Class Members to fully, finally, and forever settle, compromise, and discharge the Released Claims. As such, the Class Members understand and agree that they are providing the Released Parties with a full and complete release with respect to the Released Claims during the Class Period. It is agreed that this Stipulation is intended to fully and finally resolve the Released Claims and the final judgment shall be entered and

---

[2] Released Parties refers to:

> Defendant and its present and former parent companies, subsidiaries, divisions, affiliates, related companies, joint ventures, and each of their respective present and former officers, directors, shareholders, agents, employees, insurers, attorneys, accountants, auditors, advisors, representatives, consultants, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, general and limited partners, predecessors, successors and assigns.

(Settlement Agreement § I, ¶ 28.)

[3] Released Claims refers to:

> [A]ll claims and causes of action asserted in the Action for Defendant's failure to pay wages due on termination in violation of California Labor Code sections 201-203, PAGA penalties based on the underlying alleged waiting time violations pursuant to Labor Code sections 2698-2699.5, as well as any other relate Claims that have been, or could have been, raised regarding or relating to Defendant's liability for waiting time penalties from May 13, 2014 through preliminary approval of this settlement by the Court against Defendant Union Pacific Railroad Company and the Released Parties. The parties further acknowledge and agree that Plaintiff Richard Fowler has not alleged a claim against Defendant for waiting time penalties, or any PAGA penalties related to any such claim, and is also not a member of the Settlement Class.

(Settlement Agreement § I, ¶ 27.)

> satisfied as to each and every Class Member with respect to the Released Claims, except as to those who timely Opt-Out.
>
> Each Class Member, except those who timely Opt-Out, will be bound to the release of Released Claims as a result of the Settlement and to the terms of the Final Judgment and the satisfaction of such Judgment.

(Settlement Agreement § X, ¶ 1.)

### C. Financial Terms

The Settlement is non-reversionary. (MFA at 9.) The Settlement Agreement proposes a gross settlement amount of $117,000. (Settlement Agreement § I, ¶ 32.) However, the Settlement Agreement provides that if the actual number of class members exceeds 475, the settlement amount will be increased by a pro rata amount up to a maximum of an additional $75,000. (Id. § VII, ¶ 3.) Here, the 1,200 actual number of class members significantly exceeds the estimated 475. (MFA at 8.) Accordingly, the Escalator Clause was triggered, and the gross settlement amount is $192,000. (Id.) The parties propose to divide the settlement amount as follows. Defendants will pay $3,510 as a PAGA award, of which 75% ($2,632.50) will be paid to the California Labor and Workforce Development Agency with the balance staying in the net settlement amount for distribution to the settlement class. (Settlement Agreement § IV, ¶ 1.) Class counsel may seek an award of attorneys' fees not more than 15% of the gross settlement amount. (Id. § IV, ¶ 6.) In light of the $75,000 increase to the gross settlement amount, Plaintiff increases the amount he seeks for attorneys' fees from $17,550 to $28,800. (MFA at 8 n.9.) $28,800 reflects 15% of the escalated $192,000 gross settlement amount. Plaintiff requests $5,000 in costs, the maximum amount permitted under the Settlement Agreement. (Id. at 8; Settlement Agreement § IV, ¶ 6.) Additionally, the settlement administrator, Simpluris, Inc., will be paid from the gross settlement amount for reasonable costs of administering the Settlement Agreement. (Settlement Agreement § V, ¶ 1.) The Settlement Agreement permits administration costs no more than $17,000. (Id.) In moving for preliminary approval, parties requested the Court approve up to $13,000 in administration costs. (Preliminary Approval Order at 8.) The Court preliminarily approved administration costs up to $13,000 and ordered this amount to be reflected in the notice disseminated. (Id. at 8, 16-17.) The actual notice disseminated states that under the settlement, "up to $13,000.00 will be paid from the Settlement Amount to pay the Settlement Administration Costs." ("Notice," Dkt. No. 45-2.) Because of the increase in class size, actual costs of administration totaled $13,518 and Plaintiff seeks an award covering the additional $518. (MFA at 9.) Plaintiff also seeks a service award of $3,000. (MFA at 9.)

If the Court awards each of the above requests, the net settlement amount is $139,049.50. (MFA at 9.) Each individual settlement payment will total the net settlement amount divided by the total number of class members. (Settlement Agreement at § VII, § 3.) Accordingly, Plaintiff estimates the settlement share is $115.97 per class member. (Butler Decl. ¶ 12.) At the preliminary approval stage, the parties grossly underestimated the total number of class

members. Despite the $75,000 escalation in the gross settlement amount to account for this increase, the average per class member share is significantly lower than the $168.03 Plaintiff projected when seeking preliminary approval.

**D. Notice**

The Settlement Agreement proposes the following procedure to notify the settlement class members of the Settlement Agreement. (See Settlement Agreement § VI.) Notice shall be provided to class members in the following manner: Within 14 days after this Order of Preliminary Approval and entry of an agreed protective order, Defendant shall provide the settlement administrator and class counsel with an updated list of class members, including their names, social security numbers, last-known addresses, and phone numbers. (Id. ¶ 2.)

Within 28 days following the date of this Order of Preliminary Approval and the entry of an agreed protective order, the settlement administrator shall determine the individual settlement payments for class members, populate the class notice and share form accordingly, send each class member the class notice and share form via first-class United States mail. (Id.) The class notice shall also contain an easily understood statement alerting the class members that, unless they elect to opt-out of the Settlement, the class member is releasing and waiving all released claims against Defendant. (Id.) The share form will inform each class member of his or her estimated share of the settlement. (Id.)

Class members who do not timely opt-out of the Settlement will be deemed to participate in the Settlement and shall become a class participant without having to submit a claim form or take any other action. (Id. ¶ 3.) In order to opt-out of the Settlement, the class member must submit a written request to the settlement administrator no later than 45 days after being mailed by the settlement administrator ("Response Deadline"). (Id.) Any opt-out request that is not postmarked by the Response Deadline will be invalid. (Id.) In the event that, prior to the Response Deadline, any class notice mailed to a class member is returned as having been undelivered by the United States Postal Service, the settlement administrator shall perform a skip trace search and seek an address correction for such class member(s), and a second class notice will be sent to any new or different address obtained. (Id.) Such class member(s) shall have an additional 14 days in which to opt-out. (Id.) If the settlement administrator determines that an opt-out is deficient, then the settlement administrator shall mail a deficiency letter to that class member identifying the problem. (Id.) Such class member(s) shall have an additional 14 days in which to remedy the deficiency and opt-out. (Id.) It will be presumed that, if an envelope containing the class notice has not been returned within 28 days of the mailing, the class member received the class notice. (Id.)

The class notice shall inform the class members of their right to object to the Settlement. (Id. ¶ 4.) Any class member who wishes to object to the Settlement must submit a written objection to the settlement administrator no later than the Response Deadline. (Id.) If a class member opts-out and objects, the parties will treat that person as having only opted out and the objection shall be disregarded. (Id.)

On September 21, 2018, the claims administrator mailed the notice packets. (Butler Decl. ¶ 8.) The claims administrator performed skip trace searches on and re-mailed all packets returned as undeliverable. (Id. ¶ 9.) Only five notice packets remained undeliverable. (Id.)

**E. Performance of the Settlement Agreement**

The claims administrator received information for 1,200 class members. (Butler Decl. ¶ 6.) As of December 5, 2018, the claim administrator received one request for exclusion. (Id. ¶ 13.) The claims administrator did not received any objections. (Id. ¶ 14.)

### III.   LEGAL STANDARD

**A. Class Action Settlement**

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. See id. "The settlement must stand or fall in its entirety." Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act ("CAFA"). Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3). Id.

**B. Attorneys' Fees**

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2). While the rule specifies requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV. RULE 23 REQUIREMENTS

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

Here, class counsel Ackerman declares under penalty of perjury that Defense counsel served his office with a copy of the CAFA notice that was also served on the Office of the United States Attorney General and the Office of the California Attorney General on June 18, 2018. ("Ackerman Declaration," Dkt. No. 45-1 ¶ 15.) Accordingly, the notice requirements of 28 U.S.C. § 1715 have been satisfied.

///
///

B. Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Class in this matter under Rules 23(a) and 23(b)(3). (Preliminary Approval Order at 3-6.) Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C-08-5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04-2147-PHX-JAT, CV 04-2204-PHX-JAT, CV 04-2334-PHX-JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Class, although much larger than anticipated, has not changed since it was conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Class.

C. Rule 23(c)(2)

Rule 23(c)(2)(B) requires the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the notice sent to class members. The Court also approved a continuation of dates in response to delays resulting from recalculations required once the Escalator Clause was triggered. (Dkt. Nos. 43-44). The claims administrator timely mailed the Notice Packet. (Butler Declaration ¶¶ 8-9.) The Court therefore finds that notice to the Class was adequate.

D. Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on January 7, 2019. In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Here, Plaintiff acknowledges the weaknesses of his claims and the possible range of recovery. (MFA at 16-17.) Plaintiff believes he has a strong possibility of certifying his Section 203 waiting time penalty claim and pursuing the related PAGA claims without the need for class certification. (Id. at 17.) However, he recognizes that the Class faces significant risk in continuing this litigation, as the Court dismissed most of Plaintiff's claims on preemption grounds. (Id.) Plaintiff believes Defendant's preemption arguments as to the surviving claims would pose a significant risk at the summary judgment stage. (Id.) Plaintiff further acknowledges Defendant has strong defenses to class certification and Plaintiff's contention that Defendant willfully failed to pay all wages owed at the time of termination. (Id. at 17-18.)

Given the challenges Plaintiff faces in continued litigation over such issues, the Court finds this factor weighs in favor of approval. See Barbosa v. Cargill Meat Solutions Corp., 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.")

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Here, without settlement, the parties would continue litigating the class certification issue as well as the ultimate merits of the case – a long, complex, and expensive process. Therefore, the settlement avoids further protracted and expensive litigation. Accordingly, the Court finds this factor weights in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Under Rule 23, a court may revisit its prior grant of certification prior to final judgment. Fed. R. Civ. P. 23(c)(1)(C) ("An order under that grants or denies class certification may be altered or amended before final judgment"). Here, the Court has only conditionally certified the Class. Plaintiff notes that Defendant raises a predominance defense to certification by asserting that any late payments of final wages was not standard practice. (MFA at 17.) Thus, on balance, this factor favors approval. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (explaining that circumstances could arise justifying decertification and thus the factor weighed in favor of approving the settlement).

### 4. Amount Offered in Settlement

The amount offered in the Settlement Agreement weighs in favor of final approval. Plaintiff calculates that if he prevailed on his class-wide claims, the maximum damages available to class members, based on the 50% violation rate established by sampling records, would be approximately $708,000. (MFA at 18 n.16, 18 n.17.) Thus, the gross settlement amount of $192,000 offers the Class approximately 27% of their maximum potential damages recovery. However, Defendant raises numerous strong defenses to liability. Based on the relative strengths of each defense, Plaintiff calculated the expected recovery by discounting his maximum recovery to account for such risks. (MFA at 18-19.) After these adjustments, Plaintiff's expected class recovery is $288,00. (MFA at 18-19.) Under this projection, the Settlement Agreement offers class members a 67% of their risk-adjusted potential damages recovery. Given the potential defenses Defendant could put forward, including an argument against class certification, the Court finds the amount offered here to be appropriate.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

Here, the parties engaged in two full-day mediation sessions, extensive investigation, and informal discovery, including the production of hundreds of pages of documents and extensive information about Defendant's employment policies and practices in California. (MFA at 20-21.) Defendant provided the following: (1) a detailed letter setting forth Defendant's legal positions to Plaintiff's claims; (2) the estimated number of class members; (3) Defendant's compensation policies applicable to class members; (4) information about the wages paid to class members and the frequency with which final paychecks were sent to departing employees after

their last day of employment; (5) the percentage of days worked by class members in California versus outside of California; (6) the applicable collective bargaining agreements; (7) Plaintiff's personnel file; and (8) a sample of wage statements, including final wage statements, issued to class members. (Id. at 20.) Accordingly, the Court finds the parties have developed a clear idea of the strengths and weaknesses of their respective cases. See Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."). This factor favors final approval.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class counsel have substantial experience in prosecuting, defending, and negotiating the settlement of employment wage and hour class actions. (See "Ackerman Fee Declaration," Dkt. No. 46-1 ¶¶ 5-14; "Winston Fee Declaration," Dkt. No. 46-2 ¶¶ 3-8; "Melmed Fee Declaration," Dkt. No. 46-3 ¶¶ 5-7.) Class counsel recommend approval of the Settlement and believe it is fair, adequate, reasonable, and in the best interests of the Class. (MFA at 21; Ackerman Decl. ¶¶ 10-11; Winston Fee Decl. ¶ 9; Melmed Fee Decl. ¶ 9.) As a result, the experience and views of class counsel also weigh in favor of final approval.

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 8. Opposition by Class Members

No class member has opted out of or objected to the Settlement. (See Butler Decl. ¶¶ 13, 14.) This factor favors approval.

### E. Settlement Administration Costs

Plaintiff seeks $13,518 in settlement administration costs, $518 more than what this Court preliminarily approved. (MFA at 9, 9 n.7.) Plaintiff explains that because of the increase in class size, actual costs of administration totaled $13,518. (Id. 9.) The Preliminary Approval Order approved administration costs up to $13,000 and ordered this sum to be reflected in the notice

disseminated. (Preliminary Approval Order at 8, 16-17.) The actual notice disseminated states that under the settlement, "up to $13,000.00 will be paid from the Settlement Amount to pay the Settlement Administration Costs." (Notice (emphasis added).) Because the Notice informs class members that Plaintiff would seek settlement administration costs "up to" $13,000, the Court will not approve an award for the additional $518.

**F. Attorneys' Fees and Costs**

   **1. Fees**

Plaintiff also seeks approval of his request for attorneys' fees. (See MAF.) Courts are obliged to ensure the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on the amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011.) "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

A court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[4] Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the

---

[4] In Kerr, the Ninth Circuit adopted the 12–factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr, 526 F.2d at 70.

"benchmark" for attorneys' fees calculations. Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

To determine whether the percentage requested is reasonable, courts may examine several factors, including:

> [T]he extent to which class counsel achieved the results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burden class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation mark omitted). The Ninth Circuit has allowed courts to award attorney's fees using the percentage method "in lieu of the often more time-consuming task of calculating the lodestar." Bluetooth, 654 F.3d at 942.

Here, Plaintiff seeks 15% ($28,800) of the escalated general common fund ($192,000). (MAF at 7.) The Court considered the results achieved and the risk of litigation (e.g., the number and quality of defenses), as well as the skill required and work performed to litigate this case. Class counsel obtained a settlement that confers a significant benefit to the Class, particularly in light of the risks and potential expenses involved in this litigation. The net settlement available to the class totals $139,567.50, or an average settlement share of approximately $116.40 per class member. Class counsel contends their considerable skill and expertise positioned the Class to achieve this favorable settlement. (Id. at 19.) Furthermore, the Class was informed via the Notice that class counsel would seek $28,800 (15%) in fees, and only one class member requested exclusion. (Butler Decl. ¶¶ 11, 13.) No class members objected to the Settlement Agreement. (Id. ¶ 14.)

In addition, the Court took into account the contingent nature of the fee and financial burden on class counsel as well as awards made in similar cases. These factors, the Court finds, justify an award of 15% or $28,800 in attorneys' fees. This requested 15% award is presumptively reasonable.

The Court now turns to the lodestar method as a means of cross-checking the presumptively reasonable 15% award. Class counsel dedicated approximately 111 hours to this litigation for a lodestar total over $57,000. (MAF at 8.) They requested fees totaling only $28,800, which is just over half the lodestar amount. (Ackerman Fee Decl. ¶¶ 24-25.) Attorney timekeepers billed at hourly rates ranging from $440-$717. (Ackerman Fee Decl. ¶ 24.) Class counsel represents these rates are comparable to rates of attorneys with similar experience and qualifications. (Id. ¶ 25.) Additionally, in a different action, this Court has already found the rates of these particular attorneys to be reasonable. See Hollis v. Union Pacific Railroad Co.,

Case No. 5:17-cv-02499-JGB(SHKx), Order Granting Final Approval and Attorneys' Fees, dated Sept. 19, 2018 (Dkt. No. 28).

In light of the presumptive reasonableness of the 15% award, the complexity of the case, the risks involved in contingent representation, and the potential length of litigation, the Court finds this request to be acceptable. Thus, the Court APPROVES the requested attorneys' fees of $28,800.

### 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class counsel requests $5,000 in costs. (MAF at 23.) Class counsel's actual costs total $5,049, slightly more than the amount requested. (Id. at 9 n.4.) An itemized breakdown of the expenses in this case include mediation fees, legal research fees, travel costs, copying, and postage. (Ackerman Decl. ¶ 27.) All of these expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement). The Court therefore APPROVES the requested amount for costs.

### G. Incentive Awards

The trial court has discretion to award incentives to the class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff seeks a $3,000 incentive award for his service to the Class. (MFA at 23.) Plaintiff spent time in meetings with class counsel, gathered and provided documents, attended two full-day mediation sessions, assumed financial risk for pursuing this litigation, and agreed to a release of claims broader than the release for other class members. (Id.; see also Ackerman Decl. ¶ 14.) Given Plaintiff's involvement and assumption of significant risk, the Court AWARDS $3,000 to Plaintiff Hollis.

## V. CONCLUSION

For the reasons stated above, the Court:

1. GRANTS final approval of the Settlement Agreement;

2. AWARDS Class Counsel attorneys' fees in the amount of $28,800;

3. AWARDS Class Counsel costs in the amount of $5,000;

4. AWARDS $3,000 to Plaintiff Hollis;

5. ORDERS the payment of $2,632.50 to the California Labor and Workforce Development Agency;

6. ORDERS the payment of $13,000 to the claims administrator; and

7. DISMISSES the Complaint WITH PREJUDICE.

The Court ORDERS such judgment be entered.


**IT IS SO ORDERED.**


cc: FISCAL